DATE: 1/24/18 TIME: 10:30 AM                **Wesmere Country Club**                Page: 2

FINANCIAL TRANSACTIONS - 01/24/18

5204 Burgess Drive
LaJuana Smith
Unit ID: WCC0254
STATUS: 30 - 30-Day Demand
PREPAID BAL:    0.00

| DATE | PAYMT AMT | CHECK # DEP DT | CODE | N/A | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|
| 041717 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 736.60 |
| 041717 | Action taken: 30 - 30-Day Demand | | | | | | |
| 041717 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 35.00 | 771.60 |
| 050117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 840.00 |
| 051717 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 850.00 |
| 051717 | Action taken: 30 - 30-Day Demand | | | | | | |
| 051717 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 35.00 | 885.00 |
| 060117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 953.40 |
| 061917 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 963.40 |
| 061917 | Action taken: 30 - 30-Day Demand | | | | | | |
| 061917 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 35.00 | 998.40 |
| 070117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 1066.80 |
| 071717 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 1076.80 |
| 071717 | Action taken: 30 - 30-Day Demand | | | | | | |
| 071717 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 35.00 | 1111.80 |
| 080117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 1180.20 |
| 081817 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 1190.20 |
| 090117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 1258.60 |
| 091817 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 1268.60 |
| 100117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 1337.00 |
| 101717 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 1347.00 |
| 110117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 1415.40 |
| 111717 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 1425.40 |
| 120117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 1493.80 |
| 121817 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 1503.80 |
| 010118 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 1572.20 |
| 011718 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 1582.20 |
| 1/30/18 | | BK Fee - Lift Stay | | | | 781.00 | 2,363.20 |

*(Last row handwritten)*

DATE: 1/24/18 TIME: 10:30 AM　　　　　　　　**Wesmere Country Club**　　　　　　　　Page: 1

**FINANCIAL TRANSACTIONS - 01/24/18**

5204 Burgess Drive
LaJuana Smith
Unit ID: WCC0254
STATUS: 30 - 30-Day Demand
PREPAID BAL:　0.00

| DATE | PAYMT AMT | CHECK # DEP DT | CODE | N/A | DESCRIPTION | AMOUNT | BALANCE |
|---|---|---|---|---|---|---|---|
| 081616 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 10.00 |
| 081616 | Action taken: 30 - 30-Day Demand | | | | | | |
| 081616 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 35.00 | 45.00 |
| 090116 | | APPLY CHARGES | A1 | | Monthly Dues | 59.50 | 104.50 |
| 090916 | | EXPENSE ADJ | 03 | | Admin. Fees | (35.00) | 69.50 |
| 090916 | | EXPENSE ADJ | 01 | | Late Fees | (10.00) | 59.50 |
| 090916 | Adjusted to previous owner ledger. KM | | | | | | |
| 100116 | | APPLY CHARGES | A1 | | Monthly Dues | 59.50 | 119.00 |
| 101816 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 129.00 |
| 101816 | Action taken: 20 - 2nd Late Notice | | | | | | |
| 101816 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 25.00 | 154.00 |
| 110116 | | APPLY CHARGES | A1 | | Monthly Dues | 59.50 | 213.50 |
| 111616 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 223.50 |
| 111616 | Action taken: 20 - 2nd Late Notice | | | | | | |
| 111616 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 25.00 | 248.50 |
| 120116 | | APPLY CHARGES | A1 | | Monthly Dues | 59.50 | 308.00 |
| 121516 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 318.00 |
| 010117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 386.40 |
| 011717 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 396.40 |
| 011717 | Action taken: 30 - 30-Day Demand | | | | | | |
| 011717 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 35.00 | 431.40 |
| 020117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 499.80 |
| 021617 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 509.80 |
| 021617 | Action taken: 50 - Atty Turnover | | | | | | |
| 021617 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 35.00 | 544.80 |
| 030117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 613.20 |
| 031717 | | APPLY LATE FEE | 01 | | Late Fees | 10.00 | 623.20 |
| 031717 | Action taken: 30 - 30-Day Demand | | | | | | |
| 031717 | | APPLY ADMIN FEE | 03 | | Admin. Fees | 35.00 | 658.20 |
| 040117 | | APPLY CHARGES | A1 | | Monthly Dues | 68.40 | 726.60 |

R95-028316

```
Mary Ann Stukel        05/02/95
Will County Recorder   11:38
           HMC  Fee:    85.00
R 95028316      Page  1 of 75
```

DECLARATION OF COVENANTS, CONDITIONS AND
RESTRICTIONS FOR WESMERE COUNTRY CLUB

WILL COUNTY RECORDER

74                    1 of 75

R95-028316

8.05 <u>Personal Property and Real Property for Common Use</u>.  The Association, through action of the Board, may acquire and hold tangible and intangible personal property and real property and may dispose of the same by sale or otherwise. All funds received and title to all properties acquired by the Association and the proceeds thereof, after deducting therefrom the costs incurred by the Association in acquiring or selling the same, shall be held by and for the benefit of the Association. The undivided interests of the Owners in the funds and assets of the Association cannot be individually assigned, hypothecated, or transferred in any manner, except to the extent that a transfer of the ownership of a Lot or Dwelling also transfers the membership in the Association which is an appurtenance to such Lot or Dwelling.

8.06 <u>Rules and Regulations</u>.  The Association, through the Board, may make and enforce reasonable rules and regulations governing the use of the Lots, Dwellings, Neighborhoods and Common Area, which rules and regulations shall be consistent with the rights and duties established by this Declaration.

8.07 <u>Indemnification</u>.  The Association shall indemnify every officer and director of the Association against any and all expenses, including court costs and reasonable attorney fees, reasonably incurred by or imposed upon any officer or director in connection with any action, suit or other proceeding (including settlement of any suit or proceeding if approved by the Board) to which he may be made a party by reason of being or having been an officer or directors at the time such expenses are incurred. The officers and directors shall not be liable for any mistake of judgment, negligence, or otherwise, except for their own willful misconduct or nonfeasance. The officers and directors shall have no personal liability with respect to any contract or other commitment made by them, in good faith, on behalf of the Association (except to the extent that such officers or directors may also be members of the Association) and the Association shall indemnify and forever hold each such officer and director free and harmless against any and all liability to others on account of any such contract or commitment. Any right to indemnification provided for herein shall not be exclusive of any other rights to which any officer or director, or former officer or director, may be entitled. The Association shall as a Common Expense maintain adequate general liability and officers' and directors' liability insurance to fund this obligation.

## ARTICLE IX
## COVENANTS FOR MAINTENANCE ASSESSMENTS

9.01 <u>Creation of the Lien and Personal Obligation</u>.  Each Owner of a Dwelling or Lot, by acceptance of a deed therefor, whether or not it shall be so expressed in any such deed or other conveyance for each Dwelling or Lot owned by such Owner, hereby covenants and agrees and shall be deemed to covenant and agree to pay to the Association such assessments and user charges as are levied pursuant to the provisions of this Declaration and the By-Laws of the Association. Such assessments and user charges, together with interest thereon and cost of collection, if any, as hereinafter provided, shall be a charge and continuing lien upon the Dwelling or Lot against which such assessment is made. Each such assessment and user charge, together with such interest and costs, shall also be the personal obligation of the Member who was the Owner of such Dwelling or Lot at the time when the same fell due.

9.02 <u>Purpose of Assessments</u>.  The assessments for Common Expenses levied by the Association (or by Declarant acting on its behalf pursuant to Section 4.05(c) hereof) shall be used for the purpose of promoting the recreation, health, safety and welfare of the Members of the Association and in particular, without limiting the foregoing: (i) for the improvement and maintenance of the services and facilities devoted to the use and enjoyment of the Common Area, (ii) for the making of repairs, replacements and additions to the Com-

HER110A 04/25/95.10                                     R-23

R95-028346

mon Area, defraying the cost of labor, equipment, and material required for the maintenance of the Common Area, (iii) for the operation, care, upkeep, maintenance, replacement and of any common areas of any Neighborhood Association to the extent any such Neighborhood Association has delegated these powers and duties to the Association, and (iv) in general for carrying out the duties of the Board as set forth in this Declaration and the By-Laws of the Association; and for carrying out the purposes of the Association as stated herein and in its Charter.

### 9.03 Assessment Procedures.

(a) *Preparation of Estimated Budget.* Each year on or before November 1, the Board shall estimate the total amount necessary to pay the cost of wages, materials, insurance, services, fees, supplies and other items which, in the judgment of the Board, will be required to be provided to the Association or required to meet the Association's obligations during the ensuing calendar year to effect the purposes of the Association, a copy of which estimated budget shall be provided to all Owners at least thirty (30) days prior to its adoption by the Board. The annual budget shall take into account any estimated net operating income or deficit which may result from the operation of the Common Area during such year and income from user charges to be received pursuant to Section 9.03 hereof. Said "estimated cash requirement" shall be allocated among and assessed to Members in accordance with the provisions of Section 9.06 hereof. The Board shall give written notice, mailed or delivered, to each Owner no less than ten (10) and no more than thirty (30) days prior to any meeting of the Board concerning the adoption of any proposed budget or any increase or establishment of an assessment.

(b) *Date Payments Due.* On or before January 1 of the ensuing year, and on the first day of each and every month of said year each Member shall be personally obligated to pay, in the manner prescribed by Sections 9.06, 9.07 and 9.08 hereof, one twelfth (1/12th) of such Member's annual assessment, together with all user charges incurred by such Member during the preceding month. If the actual expenditures paid or provided for by the Board during said year shall be more or less than said estimated cash requirement, any net shortage or excess shall be applied as an adjustment to the installments under the current year's estimate falling due after the amount of such net shortage or excess for the preceding year has been determined.

(c) *Commencement of Assessments.* The annual assessments provided for herein shall commence for the Dwelling or Lots within the Property on the first day of the month following the conveyance by the Declarant of the first Dwelling or Lot, except as otherwise provided in Section 9.03(d) hereof. The Board shall fix the amount of the annual assessment against each Dwelling or Lot at least thirty (30) days in advance of each annual assessment period and in lieu thereof, the amount of the prior year's annual assessment shall be the fixed amount. The amount of the annual assessment to be fixed by the Board pursuant to this Section 9.03(c) shall not exceed one hundred fifteen percent (115%) of the prior year's assessment unless the assent of Association Delegates entitled to cast at least sixty-seven percent (67%) of all votes is given at a meeting called for that purpose and attended after adequate notice by Association Delegates or their proxies entitled to cast at least sixty percent (60%) of all votes; provided, however, that if Association Delegates entitled to cast sixty percent (60%) of all votes do not attend, a second meeting may be called with the same notice and the quorum therefor shall be reduced to Association Delegates or their proxies entitled to cast at least thirty (30%) of all votes. No such limitations shall apply to any Board appointed by the Declarant. Written notice of any changed amount of annual assessment shall be due on the first day of the month immediately preceding the effective date of the changed assessment. An Owner shall first be liable for payment of the full monthly assessment on the 1st day of the month following conveyance of title to him. This payment shall be in addition to the prorated

HER110A 04/25/95.10

R95-028316

portion of the monthly assessment which a new Owner agrees to pay to its seller as of the date title to a Dwelling or Lot is conveyed. The Association shall upon demand at any time furnish a certificate in writing signed by an officer or agent of the Association setting forth whether the assessments on a specified Dwelling or Lot have been paid and, if not paid, the amount of any such deficiency. Such certificate shall be conclusive evidence of payment of any assessment therein.

(d) <u>Assessment on Dwellings Under Construction</u>. With regard to any Lots owned by Declarant or any portions of the Property upon which Dwellings are being constructed or have been completed and title has not been conveyed by Declarant, the assessment respecting any such portion of the Property shall be limited to the aggregate amount of actual operating expenses from time to time required to be paid with respect to such portion of the Property provided, however, that in the event Declarant enters into a lease or installment contract for any Dwelling, then Declarant shall be responsible for the payment of assessments on such Dwelling on the same basis as any other Owner as provided in Section 9.06 hereof. Actual operating expenses shall mean those ordinary expenses attributable only to the period in question covering the maintenance and operation of the Property and shall not include capital expenditures, amounts set aside as a reserve for contingencies or replacements, repair items or inventory items to the extent attributable to subsequent periods. The Declarant hereby agrees to satisfy any deficit or shortage in the Association's actual operating expenses for any period in which the Declarant has paid reduced assessments pursuant to this Section 9.03(d), provided, however, that the Declarant's liability hereunder shall not exceed the amount by which the Declarant's assessments have been reduced below the assessments of each other Owner by reason of this Section 9.03(d).

(e) <u>Adjustments to Estimated Budget</u>. If any "estimated cash requirement" proves inadequate for any reason (including nonpayment of any Member's assessment), the Board may at any time levy a further assessment. The Board shall serve notice of such further assessment on all Members by a statement in writing giving the amount and reasons therefor, and such further assessment shall become effective with the monthly assessment payment which is due more than ten (10) days after the delivery or mailing of such notice of further assessment. All Members shall be personally liable for and obligated to pay their respective adjusted monthly amount.

(f) <u>Failure to Prepare Annual Budget</u>. The failure or delay of the Board to prepare an annual or an adjusted estimated budget shall not constitute a waiver or release in any manner of any Member's obligation to pay his share of the estimated cash requirement as herein provided, whenever the same shall be determined and in the absence of any annual estimate or adjusted estimate, each Member shall continue to pay the monthly charge at the then existing monthly rate established for the previous period.

(g) <u>User Charges</u>. The Board (or the Declarant acting pursuant to Section 4.05(c) hereof) may establish, and each Member shall pay, user charges to defray the expense of providing services, facilities or benefits which may not be used equally or proportionately by all of the Members or which, in the judgment of the Board or Declarant, should not be charged to every Member. Such expenses may include, without limitation, fees for the use of facilities located in the Common Area; lease charges; charges predicated on the negligence of any Member or the abuse of any recreational facility; and fees for such other services and facilities provided to Members which should not reasonably be allocated among all of the Members in the same manner as assessments. Such user charges may be billed separately to each Member benefited thereby, or may be added to such Member's assessment as otherwise determined, and collected as a part thereof pursuant to Sections 9.06 and 9.07 hereof. Nothing herein shall require the establishment of user charges as hereinabove authorized, and the Board may elect to treat all or any portion thereof as expenses to be defrayed by assessments.

HER110A 04/25/95.10

R95-028316

9.04 <u>Special Assessments for Capital Improvements</u>. In addition to the annual assessment authorized by Section 9.03, the Board may levy special assessments for the purpose of defraying, in whole or in part, the cost of construction or purchase of a specified capital improvement upon or to the Common Area, and the necessary fixtures and personal property related thereto; provided, however, that, except for special assessments which shall not exceed in any one (1) year the sum of $500.00 per assessed Dwelling or Lot, any such special assessment shall first be approved at a meeting of the Association Delegates by the affirmative votes of Association Delegates entitled to cast at least sixty-seven percent (67%) of all votes cast at a meeting called and held in accordance with the provisions of Section 9.05. The provisions of this Section 9.04 shall not limit the power of the Board, without such prior approval, to levy assessments to reconstruct, replace or restore any portion of the Common Area. The Board shall segregate and maintain a special reserve account (the "Master Fund") to be used solely to make capital expenditures in connection with the Common Area. In addition, at the time the initial sale of each Dwelling is closed, the purchaser of the Dwelling shall pay to the Association an amount equal to two (2) months assessments to be deposited into an account (the "Master Reserve") to be applied and used for start-up costs and as a working capital fund in connection with the initial operation of Common Area and for future working capital needs.

9.05 <u>Notice and Quorum</u>. Written notice of any meeting called for the purpose of authorizing any special assessments requiring approval pursuant to Section 9.04 hereof shall be sent to all Association Delegates not less than thirty (30) days nor more than sixty (60) days in advance of the meeting. At the opening of such meeting, the presence in person or by proxy of Association Delegates entitled to cast at least sixty percent (60%) of all the votes shall constitute a quorum; provided, that if Association Delegates entitled to cast sixty percent (60%) of all votes do not attend, a second meeting may be called with the same notice requirements as herein provided, except that the quorum therefor shall be reduced to Association Delegates entitled to cast thirty percent (30%) of all votes.

9.06 <u>Allocation of Assessments Among Members</u>. Both annual and special assessments shall be allocated among the Members by apportioning to each Member an amount equal to that proportion of the total assessment which the number of Unit Memberships held by such Member bears to the total number of Unit Memberships in the Association. Each Neighborhood Association shall be responsible for collecting on behalf of the Association all assessments due the Association from Members whose Dwellings or Lots are subject to assessment by such Neighborhood Association.

9.07 <u>Payment of Assessments</u>.

(a) Assessments allocated under Section 9.06 hereof to Members shall be added to the assessment made or levied by a Neighborhood Association against each such Member for the common expenses and user charges as provided in the applicable Neighborhood Declaration. Each such Member shall pay the assessment levied by the Association directly to the Association and shall also pay to the Association any assessment levied by the Neighborhood Association as provided in the applicable Neighborhood Declaration. All funds so collected by the Association shall be held in trust for each Neighborhood Association without any deduction or set-off, provided that such payment shall not be deemed made to the Neighborhood Association by any Member until actually received by the Neighborhood Association from the Association.

(b) Upon written demand of an Owner or a Mortgagee at any time, the Association shall furnish such Owner or Mortgagee a written dated certificate signed by an officer of the Association setting forth whether there are any then unpaid annual or special assessments levied against such Owner's Dwelling or Lot. Such Certificate shall be conclusive

HER110A 04/25/95.10

25-56

R95-028316

evidence of payment of any annual or special assessments theretofore levied and not stated therein as unpaid.

9.08 **Nonpayment of Assessments.**

(a) Any installment of an assessment which is not paid to the Association when due shall be delinquent. The Association may bring an action against the Member personally obligated to pay assessments and recover the same, including interest, costs and reasonable attorneys' fees for any such action, which shall be added to the amount of such assessment and included in any judgment rendered in such action; and the Association may enforce and foreclose any lien it has or which may exist for its benefit.

(b) No Member shall be relieved of personal liability for the assessments and for other amounts due as provided herein by nonuse of the Common Area or abandonment or transfer of ownership of his Dwelling or Lot, provided that upon transfer of ownership of a Dwelling or Lot, the transferor shall not be responsible for assessments accruing after the date of transfer.

(c) The lien of the assessments provided for in Section 9.01 hereof shall be subordinate to the lien of any first mortgage or mortgages now or hereafter placed upon the properties subject to assessment; provided, however, that such subordination shall apply only to the assessments which have become due and payable prior to the earlier of the date the holder of said mortgage takes possession of the Dwelling or Lot, accepts a conveyance of any interest in the Dwelling or Lot or has a receiver appointed in a suit to foreclose his lien. Such taking of possession, conveyance or appointment shall not relieve the holder of said mortgage from liability for any assessments thereafter becoming due, nor from the lien of any such subsequent assessments. Except for the foregoing, the lien for assessments provided for in Section 9.01 shall not be affected by any sale or transfer of a Dwelling or Lot.

## ARTICLE X
## ARCHITECTURAL STANDARDS AND USE RESTRICTIONS

10.01 **Purpose.** In order to preserve the natural setting and beauty of the Development, to establish and preserve a harmonious and aesthetically pleasing design for the Development, and to protect and promote the value of the Property, the Lots, Dwellings and Neighborhoods, any and all improvements located therein or thereon shall be subject to the restrictions set forth in this Article X. Every grantee of any interest in the Property, by acceptance of a deed or other conveyance of such interest, agrees to be bound by the provisions of this Article X.

10.02 **Architectural Review Committee.** The Board shall establish the Architectural Review Committee which shall consist of up to five (5) (but not less than three (3)) members, all of whom shall be Owners and who may or may not be members of the Board, provided that prior to the termination of Declarant's right to appoint and remove officers and directors of the Association, such members do not have to be Owners. The regular term of office for each member shall be one year, coinciding with the fiscal year of the Association. Any member appointed by the Board may be removed with or without cause by the Board at any time by written notice to such appointee, and a successor or successors appointed to fill such vacancy shall serve the remainder of the term of the former member. Notwithstanding the foregoing to the contrary, any member appointed to the Architectural Review Committee by the Board shall be subject to the prior approval of Declarant until that date which is one (1) year from and after the date on which Declarant's right to appoint and remove

HER110A 04/25/95.10

~~26~~ 27